IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-8-BR

| | |
|---|---|
| PAUL H. FELDMAN and MARTIN L. PERRY, ) ) ) Plaintiffs, ) ) v. ) ) LAW ENFORCEMENT ASSOCIATES ) CORPORATION, et al., ) ) Defendants. ) | **ORDER** |

This case comes before the court on a motion (D.E. 87) by defendants Law Enforcement Associates Corporation ("LEA"), Anthony Rand, James J. Lindsay, Joseph A. Jordan, and Paul Briggs (collectively "defendants") to compel production of tax returns. The motion has been fully briefed[1] and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Minute Entry after D.E. 88). For the reasons set forth below, the motion will be allowed.

## BACKGROUND

Plaintiffs commenced this action in 2010. (Compl. (D.E. 1)). In their amended complaint, plaintiffs allege that they were formerly employed by LEA, a manufacturer of security and surveillance equipment for law enforcement purposes. (Am. Compl. (D.E.34) ¶¶ 4, 22). Defendants Rand, Lindsay, and Jordan were members of LEA's Board of Directors and Briggs was LEA's then-Chief Financial Officer. (*Id.* ¶¶ 1, 9, 42, 101). Plaintiffs maintain that after they reported to federal authorities certain misconduct by LEA, they each suffered from

---
[1] In support of their motion to compel, defendants filed exhibits (D.E. 87-1 through 87-10). Plaintiff filed a memorandum (D.E. 88) with exhibits (D.E. 88-1 through 88-8) in opposition.

medical conditions. (*Id.* ¶¶ 130-32, 143, 147). They allege that they were ultimately discharged from their employment in the latter half of 2009[2] in violation of the Americans with Disabilities Act, Sarbanes-Oxley Act, North Carolina Wage and Hour Act, and their employment contracts. (*See generally id.*). Plaintiffs seek reinstatement, compensatory damages, punitive damages, costs, and attorneys' fees, including specifically "[e]conomic damages for lost compensation and damages to [plaintiffs'] careers, reputations, and earning capacities in an amount to be determined at trial but in excess of $10,000." (*Id.*, Prayer for Relief). Defendants filed an answer generally denying plaintiffs' allegations and a counterclaim for breach of fiduciary duty. (D.E. 36). Plaintiffs filed an answer to defendants' counterclaim, denying the allegations. (D.E. 51).

On 15 August 2012, defendants served on plaintiffs a production request seeking plaintiffs' federal and state tax returns for the years 2009, 2010, and 2011. (Prod. Req. No. 15 (D.E. 87-1)). Plaintiffs objected to this request, in part, on grounds that it was unreasonably cumulative and duplicative of other discovery requests. (Resp. to Prod. Req. No. 15 (D.E. 87-2)). In addition, they contended that the request seeks information not relevant to the claims or defenses in this action. (*Id.*). Finally, they noted that they have previously produced forms documenting the unemployment compensation they received, as well as W-2 forms for income they received from LEA before their termination. (*Id.*). Following the failure to resolve the issue (*see* D.E. 87-3), defendants filed the instant motion to compel plaintiffs to produce the requested tax returns.

---

[2] Feldman was purportedly terminated on 27 August 2009 (Am. Comp. ¶ 2) and Perry on 23 September 2009 (*id.* ¶ 3).

## APPLICABLE LEGAL STANDARDS

I.  **DISCOVERY GENERALLY**

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including requests for production of documents. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 June 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). Rule 37 allows for the filing of a motion to compel discovery responses. Fed. R. Civ. P. 37(a)(3)(B).

II. **DISCOVERY OF TAX RETURNS**

Federal case law recognizes a qualified privilege limiting the disclosure of tax returns. *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, No. 1:02CV000146, 2004 WL 444570, at *2 (M.D.N.C. 24 Feb. 2004). Under this standard, tax returns are discoverable if they are

3

relevant and the information is not available from other sources.  *Id.*  The requesting party bears the burden of showing relevance and the resisting party the burden of showing availability from other sources.  *Id.*

A plaintiff in an employment case may only "recover the amount of his losses caused by the employer's breach reduced by the amount the employee obtains, or through reasonable diligence could have obtained, from other suitable employment."  *Anthony v. Atlantic Group, Inc.*, 8:09–cv–02383–JMC, 2012 WL 4009490, at *2 (D.S.C. 12 Sept. 2012).  In other words, such a plaintiff has the so-called duty to mitigate his damages.  Tax returns have been held relevant to the issue of a plaintiff employee's mitigation of damages.  *Barnette v. City of Charlotte*, No. 3:11–CV–653–DCK, 2012 WL 3812026, at *7 (W.D.N.C. 4 Sept. 2012) (directing plaintiff to produce tax returns even where W-2's and 1099's had been provided); *Stewart v. VCU Health Sys. Auth.*, No. 3:09CV738–HEH, 2012 WL 463561, at *6 (E.D. Va. 13 Feb. 2012) (noting that plaintiff employee had been directed to produce tax returns that were relevant to his mitigation of damages and earned income after termination); *Bricker v. R&A Pizza, Inc.*, No. 2:10–cv–278, 2011 WL 1990558, at *3 (S.D. Ohio 23 May 2011) ("With respect to the issue of relevancy, courts typically find tax returns to be relevant in actions where a party's income is in issue, as, for example, where a claim for lost wages has been asserted. . . . In such cases, the information in tax returns is relevant, especially as it relates to mitigation of damages.") (citations omitted); *Rosson v. Wyndham Vacations Resorts, Inc.*, No. 3–10–0429, 2011 WL 92053, at *2 (M.D. Tenn. 11 Jan. 2011) (affirming magistrate judge's order directing plaintiff to produce tax returns on grounds that the tax returns were relevant to plaintiff's duty to mitigate damages and claim for damages in addition to his credibility).

## ANALYSIS

Plaintiffs concede that information pertaining to their earned income after their termination by defendant is relevant to the issue of their mitigation of damages. They argue, however, they have already furnished income information from other sources sufficient to address this issue and that production of their tax returns is therefore not warranted. The court disagrees.

After their termination, plaintiffs jointly started a company that sells cameras for extreme sports. As evidence that they have not been able to mitigate their damages, they point to the finding in the supplemental report of their expert that they have not recouped their investment in the company. (Supp. Rep. Jean R. Hutchinson (D.E. 88-3)). Plaintiffs also cite to the 2011 tax return for their company, which they have produced to defendants.

This evidence, though, is no substitute for the tax returns defendant seeks. Not only is the expert's finding an opinion, as opposed to a fact, but plaintiffs' purported failure to recoup their investment is not necessarily inconsistent with their receipt of income from sources besides the company that mitigated their damages. Similarly, the tax return for the company, by definition, relates to only one source of potential income to plaintiffs and only one of the years following plaintiffs' termination. Thus, the information plaintiffs have produced is incomplete on its face in addressing whether they mitigated their damages after their termination. Plaintiffs' individual tax returns for the years 2009 to 2011 would manifestly help to fill in the gaps left by the information plaintiffs have produced.

Notably, by producing the tax return for their company, plaintiffs have signaled that they are not opposed in principle to production of information in tax returns relating to them. Rather, their objection goes to the particular returns containing information about them that can be

produced. They have made no showing that production of the tax returns sought would unduly prejudice them any more than the production of the company tax return has.

## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that defendants' motion (D.E. 87) to compel production of tax returns is ALLOWED. Plaintiffs shall produce the tax returns requested by 28 December 2012. Each party shall bear its own expenses incurred in connection with the motion. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).

SO ORDERED, this the 14th day of December 2012.

James E. Gates
United States Magistrate Judge